UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NOAM ADLER, | ) | CASE NO. 1:24-cv-00311 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN EXPRESS COMPANY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Before the Court is Defendant American Express National Bank's ("American Express") Motion to Stay and Motion to Compel Arbitration. (Doc. 19.) Plaintiff opposed this motion and American Express replied. (Docs. 20, 21.) For the reasons below, the motion is GRANTED, and the matter is STAYED pending arbitration.

**I.  BACKGROUND**

Plaintiff Noam Adler ("Plaintiff" or "Adler") is a resident of Ohio. (Doc. 1 at 2, ¶ 10.)[1] American Express is a national bank with its main office in Utah. (Doc. 19-1 at 116, ¶ 1.) Adler applied for and was issued five American Express credit cards between November 2, 2011 and September 2023. (*Id.* at 117, ¶¶ 3–8.) When submitting these applications, he provided two phone numbers in connection with his accounts. (*Id.* ¶ 9.)

For each of his five accounts, American Express mailed Adler a credit card and a copy of the cardmember agreement. (*Id.* at 118, ¶ 10; *see id.* at 122–91; *see also* Doc. 19 at 105–06.) Each account and cardmember agreement are governed by Utah and federal law. (Doc. 19-1 at 132, 144, 160, 174, 186.) Each agreement contains an arbitration provision, which provides in

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

relevant part:

> You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.
>
> If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.

(*Id.* at, 145, 161, 175, 186; *see id.* at 133.)[2] The cardmember agreements also state in two places that cardmembers may reject the arbitration provision by sending a written rejection notice within 45 days of the first purchase made on the card. (*See id.* at 144–45, 161, 175, 186–87.)

Each agreement also defines "claim":

> Claim means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. Claim includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account.

(*Id.* at 144, 161, 175, 186; *see id.* at 133.)

Adler alleges that throughout his thirteen-year relationship with American Express, he

---

[2] Four of Adler's five cardmember agreements use substantially similar language. The agreement for the Bonvoy American Express card contains different section headings and language, but substantially similar terms. (*Compare* Doc. 19-1 at 145 *with* Doc. 19-1 at 133 (detailing arbitration clause); *Compare* Doc. 19-1 at 144 *with* Doc. 19-1 at 133 (defining "claim").)

"received calls from Amex on an almost daily basis, many times multiple times per day for several months." (Doc. 1 at 3, ¶ 19.) Often, these calls resulted in a 21-second voice message, requiring Plaintiff to "spend time listening to his voicemail and deleting the repetitive voicemails." (*Id.* ¶ 21.) Adler alleges these calls used an artificial or pre-recorded voice. (*Id.* ¶ 22.) When he answered these "robocalls," the phone "beg[an] to ring on [Amex's] end until an AMEX representative answer[ed] the phone." (*Id.* at 4, ¶ 27.) Then, an American Express agent informed him of a $20,000 "corporate debt." (*Id.* ¶ 29.) Adler alleges the accounts and debts these calls concerned do not belong to him and refers to them as "Foreign Accounts." (*Id.* ¶¶ 29–31.) Plaintiff informed American Express of this error "on more than ten occasions." (*Id.* ¶ 31.)

Though Plaintiff notified American Express that these accounts did not belong to him, he received calls from American Express "at a minimum of 15 times per month for several years and at times [American Express] call[ed] him 3 times per day." (*Id.* ¶ 36.) The calls disrupted his personal and business routines and caused frustration. (*Id.* at 4–5, ¶¶ 38–41.) At some point, Adler "revoked any consent [American Express] may have previously had to call" him. (*Id.* at 5, ¶ 46.) Still, American Express "continued to call [Plaintiff's] telephone numbers on a consistent basis." (*Id.* ¶ 51.)

On February 19, 2024, Plaintiff commenced this action by alleging a violation of the Telephone Consumer Protection Act ("TCPA"). (Doc. 1.) The complaint seeks actual damages, statutory damages, attorney fees and costs, a declaration that American Express violated the TCPA, and an order enjoining American Express from further TCPA violations. (*Id.* at 7.)

On May 13, 2024, American Express answered the complaint. (Doc. 12.) At the June 2, 2024 Case Management Conference, American Express represented to the Court that Plaintiff's

claims may be subject to a binding arbitration clause. (*See* July 2, 2024 Minute Order.) The Court continued the case management conference and established a briefing schedule for American Express's motion to compel arbitration. (*See id.*) Thereafter, American Express moved to compel arbitration. (Doc. 19.) Plaintiff opposed the motion, and American Express replied. (Docs. 20, 21.)

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that where a "party [is] aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration [it] may petition" for an order compelling arbitration and staying proceedings in federal court "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. §§ 1, 3, 4. The FAA manifests a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005) ("[T]here is a strong presumption in favor of arbitration under the FAA.").

In the Sixth Circuit, courts apply a four-part test to determine whether to grant a motion to compel arbitration:

> [F]irst, [a court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Motions to compel arbitration are treated like motions for summary judgment. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Courts may consider both the

pleadings and other evidence submitted by the parties and view all facts and inferences in the light most favorable to the nonmoving party. *Id.* "The burden is on the party opposing arbitration to show that the agreement is not enforceable." *Townsend v. Stand Up Mgmt.*, No. 1:18CV2884, 2019 WL 3729266, at *2, 2019 U.S. Dist. LEXIS 133635, at *5 (N.D Ohio Aug. 8, 2019) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)). To meet this burden, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth*, 288 F.3d at 889.

### III. ANALYSIS

#### A. Agreement to Arbitrate

Before a court can compel parties to arbitration, it "must first determine that a valid agreement to arbitrate exists." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) (citing 9 U.S.C. § 2 and *Stout*, 228 F.3d at 714). To do so, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see Morrison v. Circuit City Stores*, 317 F.3d 646, 666 (6th Cir. 2003) (courts "review enforceability of an arbitration agreement according to the applicable state law of contract formation"). As such, arbitration agreements "may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Fazio*, 340 F.3d at 393–94 (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

The Court applies Utah law to determine whether the arbitration provision is a valid agreement. Utah Law provides:

> A credit agreement is binding and enforceable . . . if: (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor,

requests funds pursuant to the credit agreement or otherwise uses the credit offered. Utah Code. Ann. § 25-5-4(2)(e). Utah law allows open-end credit agreements to contain arbitration provisions. *See* Utah Code Ann. § 70C-4-102(2)(b) ("[A] creditor may change an open-end consumer credit contract in accordance with this section to include arbitration or other alternative dispute resolution mechanism"); § 70C-4-105(1) ("[A] creditor may contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a class action related to the open-end consumer credit contract").

As required by Utah Law, upon opening his accounts, American Express provided Adler with copies of the cardmember agreements and the physical credit cards. (Doc. 19-1 at 118, ¶ 11.)³ Each agreement states that using the credit card constitutes acceptance of the agreement's terms. (*Id.* at 119, ¶ 14.) Billing statements reflect that after receiving the agreements, Adler requested funds pursuant to the credit agreements. (*See id.* at 193–242.) For his part, Plaintiff does not contest that the cardmember agreements contain valid and enforceable arbitration provisions. (*See* Doc. 20.) Accordingly, the arbitration provisions are valid and enforceable agreements to arbitrate under Utah law. *See Smith v. ComputerTraining.com, Inc.*, 772 F.Supp.2d 850, 856–57 (E.D. Mich. 2011) (enforcing Utah choice-of-law provision and finding arbitration provision is not unconscionable under Utah law), *aff'd*, 531 F. App'x 713 (6th Cir. 2013); *see also Alonso v. Am. Express Co.*, 651 F.Supp.3d 272, 282 (D. Me. 2023) (collecting cases holding American Express's arbitration provision is enforceable under Utah law).

---

³ Adler does not recall receiving cardmember agreements and contests they were sent to him. (Doc. 20-1 at 262, ¶¶ 16, 18; Doc. 20 at 246.) However, Adler does not challenge the validity of the records attached to American Express's motion to compel arbitration. (*See* Doc. 20; *see also* Doc. 21 at 265-66.) Nor does he contest that he received credit cards from American Express and used them to make purchases, which constitutes acceptance of the terms of the agreement. (*See* Doc. 19 at 119, ¶ 14.) To the extent Adler challenges whether his TCPA claim is covered by the cardmember agreements associated with his accounts, these arguments are addressed below in the Court's assessment of the scope of the arbitration provisions.

**B.     Scope of Agreement**

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.  When a valid agreement to arbitration exits, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986); *see also Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) ("[O]nly an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators.").  At the same time, "arbitration remains a matter of contract, and a party cannot be required to submit to arbitration in any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648.  "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 91.

The parties disagree whether Adler's claim falls within the scope of the arbitration agreement.  To Adler, because the calls he received concerned accounts he did not hold, neither he nor the phone calls are covered by the arbitration provision.  (*See* Doc. 20 at 249.)  Adler argues the agreement defines "you" and "your" as "the person who applied for this Account and for whom we opened the account" or "anyone who agrees to pay for this Account."  (*Id.*)  This definition does not include Adler, who "did not have these Foreign Accounts, did not enter into agreements for them, and did not have a relationship with Amex on them."  (*Id.* at 249–50.) Plaintiff also warns that under American Express's interpretation of the arbitration provision, "[v]irtually any future claim is covered notwithstanding the limiting grounds of the Arbitration

Clause." (*Id.* at 258.) To Plaintiff, allowing American Express to "circumvent the entire judicial process in virtually all of its future dealings with a debtor" would "lead[] to the same absurd results" rejected by other courts considering whether to compel arbitration. (*Id.* (emphasis omitted).) [4]

American Express argues Plaintiff's interpretation of the scope of the arbitration provision creates limits not in the provision's plain language. (Doc. 21 at 271.) American Express characterizes the Foreign Accounts as a "red herring" because American Express is not attempting to enforce the agreement with the Foreign Accountholder, who is not a party to this litigation. (*Id.* at 268.) Instead, this case concerns parties to a binding cardmember agreement that Adler acknowledges is applicable to him. (*Id.*) As American Express explains, but for Adler's "longstanding and pre-existing relationship with American Express," he would not have received phone calls, and "this dispute never would have arisen at all." (*Id.*) American Express argues the broad language of the arbitration provision applies here because the claim is based on a statute, the claim relates to Adler's accounts and his relationship with American Express, and the arbitration provision "plainly covers the TCPA claims that American Express did not have his consent to call" Adler's phone number. (*Id.* at 270.)

Though the calls at issue may have concerned different accounts and other accountholder's debts, ultimately, the calls reached Adler by virtue of his status as an American Express cardmember. Adler provided his phone number to American Express in connection with his accounts and agreed to the cardmember agreement by using his credit cards. (*See* Doc. 19-1 at 117, ¶ 9; *id.* at 193–242.) The arbitration provision within this agreement applies to "any

---

[4] In his opposition, Adler asserts "contract formation is not at issue here but anyway does not help Defendant's position." (Doc. 20 at 250.) Because the parties do not contest contract formation, the Court will not address this issue.

current or future claim, dispute, or controversy relating to" Adler's accounts and expressly includes a claim based on statutes like the TCPA. (*See, e.g.*, Doc. 19-1 at 144.) Accordingly, Adler has not met his burden of proving that his TCPA claim is unsuitable for arbitration under the scope of the arbitration provision. Resolving all doubts about the scope of arbitrable issues in favor of arbitration, the Court finds Adler's claim is within the scope arbitration provision. *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 625 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hops.*, 460 U.S. at 24–25).

### C. Stays Pending Arbitration

American Express requested that the Court stay this case pending arbitration. (Doc. 19 at 113.) Adler's opposition does not address whether a stay is appropriate. (*See* Doc. 20.) In general, when a party moves to compel arbitration, the proper procedure is for the district court to stay the case until the completion of the arbitration. *See Javitch*, 315 F.3d at 624 ("To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement."). Although the entirety of Adler's complaint will be resolved through arbitration, the Sixth Circuit has made clear that entry of a stay pending arbitration is the preferred approach. *See Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941–42 (6th Cir. 2021) ("Because a dismissal, unlike a stay, permits an objecting party to file an immediate appeal, a district court dismissal order undercuts the pro-arbitration appellate-review provisions of the Act."). This case is stayed pending arbitration.

### IV. CONCLUSION

For the reasons stated herein, American Express's motion to compel arbitration (Doc. 19) is GRANTED, and the matter is STAYED pending arbitration. Plaintiff is hereby ORDERED to

file a notice with the Court within thirty (30) days of the completion of the arbitration process sating if additional matters require the Court's attention or if the matter should be dismissed. A failure to comply with this deadline may result in dismissal of this action *with prejudice*.

    IT IS SO ORDERED.

**Date**: March 25, 2025

                                        BRIDGET MEEHAN BRENNAN
                                        UNITED STATES DISTRICT JUDGE